Good morning. If it pleases the court, thank you for allowing me to come before you today. I'm here on behalf of Ms. Lorena Espinoza Aguilar, who applied pro se for asylum in 2015 from a detention center and was heard by an immigration judge at a separate court, and I believe that her trial was fundamentally unfair. Her case needs to be remanded to the immigration judge to develop the record because of the procedural deficiencies and the undeveloped record, which caused her due process to not, to be violated to such an extent that it may have affected the outcome of the proceedings. Mr. Holt, let me clear up something that I didn't see quite explained in the record. Ms. Espinoza attempted to submit what the IJ referred to as a thick packet of documents on the hearing, on the IJ hearing, and those documents were not accepted into evidence. They were documents which she claimed would show grounds for asylum and withholding and cat relief, right? And then later she mentioned some other documents, let's call that thick package exhibit A. And then later on she mentions a mail package which had been sent to her by her sister, and it was returned, and she used some letters, LOP, which I don't understand what they meant. And they were returned from the place where she had been in custody to her sister, and let's call that exhibit B, and they were further documentation which she thought would be helpful to her claims. My problem in assessing whether a due process violation was indeed prejudicial is I couldn't find in the record either exhibit A, the thick packet, or exhibit B, the packet that had been returned to the sister. Am I missing something in the record? Your Honor, those documents are not in the record. Then help me out. How can I tell whether those documents, if in the record, would have had a material effect on the claims for relief? Thank you, Your Honor. So first we would want to consider whether the evidence would have been relevant. Well, how do we know is the problem? I have the same concern that Judge Bay has expressed. Let's assume for purposes of our questions that you've established that your client's rights were violated by the way the hearing was conducted, whether statutory or due process rights. Even if it's a due process violation, our case law says you'd have to show some prejudice. Typically, and obviously this didn't occur here because your client was pro se, we'd have an offer of proof. The documents wouldn't be admitted into evidence, but they'd be marked for identification or something. In this case, we just don't know what the documents say. You've never attempted later on to get them into the record. Maybe there was no procedural way to do so. So how do we find the requisite prejudice? Correct. I didn't have a procedural way to do it. What I would do is I would refer to the record where the immigration judge stated that the documents related to what's going on. No, I'm assuming that the immigration judge made a mistake. I'm assuming the judge should have either looked at the documents or at the very least marked them for identification. And I understand the difficulties of conducting a pro se hearing with the petitioner in one place and the judge in another. Our case law, even for due process violations, seems to require, I don't know whether it requires some showing of prejudice. I guess that's what I'm asking. Do we have to find prejudice or is it just enough that there was a violation here? That's another question. No, that's the question. Okay, so is prejudice necessary? It's not necessary where the agency violated the regulation that protected the fundamental due process right. Here, there's a regulation that indicates that at 8 CFR 1240.11 C3 Roman numeral 3. Go slower. I'm taking a note. What is the regulation? 8 CFR 1240.11 C. 1240.11 C. C3 Roman numeral 3. And therein it states, applicant shall be examined under oath on his or her application and may present evidence and witnesses in his or her own behalf. The documents were clearly relevant. The immigration judge stated as much that they were information regarding her town, what had happened in her town, what was happening in her town, and the criminality. I think you're missing the import of my question. And I think Judge Baez. I'm assuming the immigration judge violated the regulation. I'm even assuming for purposes of this question that he violated the Constitution. I'm trying to figure out whether it's enough that whether or not we, what's our standard on the prejudice side? There is some case law suggesting that maybe you don't have to show prejudice at all. But I don't know what case law applies to this. So I'm assuming off this record I can't tell whether the hearing would have ended up differently had he admitted every single bit of evidence because we don't know what it is. So tell me, are you excused from showing prejudice? Is it enough that he just kept the documents out? That's the hard part of the case for me. Here I would argue that, one, it's not necessary to show prejudice because of the violation. And then the alternative. Can you give us a case that says that? We'll give you some extra time. Don't worry about it. Yeah, if you need to sit down and look, you can save a minute for rebuttal and do that. I've got some cases I want to ask your friend about, so maybe that will remind you of them. It's in the due process immigration proceedings, Ninth Circuit primer. The case that I would rely on would be the United States v. Rya Vaca. It's a Ninth Circuit 2014 case. Do you have a citation? 771F3, 1195 at 1204. Counsel, if I could ask a question. You said they were relevant to things happening in her town. Help me here. What Judge Bea called Exhibit A, the fixed stack, my understanding is that's from an ABA generalized document, and that does not have anything to do with her town. She has a statement about there are things that my town, what happened in my town, and my sister sent me some evidence. Now, those ABA documents, they exist. The sister's documents, is there any evidence that they have ever surfaced or been found in any way? So they were rejected, and I don't know if she has them in her possession now. Okay, second question following from that. In your brief, your major, to me, substantive argument is that, well, maybe she was related to these self-defense squads, and that would be a cognizable group. But help me, I see nothing that you tie that to any of these documents. That is, if the ABA documents at page 325 said, in Machoacan, there are lots of self-defense groups, I would assume you would have cited that. So am I right that the things in your brief do not tie even now to either the big stack of documents or even statements that the sister's documents would have said that? Has that been fair to you? The LOP, the Legal Orientation Program, administered by the American Bar Association, provides comprehensive documentation regarding the country, but then they also can do state and they can do regional. And in this case, I believe it was state and regional for Michoacan, which is a hotbed of complaints. But you have those documents, right? The documents exist. And they're not cited in either your submission to the ABA or your submission to us. Is that correct? Because the court rejected them. And so we filed the request to have it remanded for those documents to be heard. When you filed that remand request, did you attach the documents to their request? I didn't because they were in existence before. So our argument was that the immigration judge violated Ms. Espinosa's due process rights by not allowing them in the first instance when she had them in her hand at the hearing. I'd like to reserve the last 10 seconds. We'll give you an extra minute. Don't worry. Thank you. Thank you very much. May it please the Court. Robert Tennyson for the government. I think that you want to hear about the prejudice issue. So let me first talk about that. I think it's the best part of your argument. You may want to defend what the immigration judge did here, but I wouldn't start with that. All right. Then I'll start with prejudice and I'll go back to what the immigration judge did. And we'll split this into the develop the record claim and into the introduction of documents. I think the prejudice issue is the same. Petitioner's counsel argues with regard to prejudice that the petitioner would be part of this, I guess what, defense league in Michigan, right? In Michigan. And that the documents that she would present would show that there are these defense leagues that sort of oppose the Knights Templar in the region. The difficulty with that is that neither her testimony nor the statement that she was allowed to read  But here's my difficulty with that. The IJ's got a regulatory obligation, probably a statutory obligation to develop the record. That is correct, Your Honor. Petitioner shows up on video remote from him with a bunch of documents. And he says, after very cursory questioning of what the documents might contain, she says they describe conditions in my hometown. He says, well, I'll just assume that they show things are really bad in Mexico and I'll take judicial notice of that. And we don't have the documents. Now, one reason we don't have them is, of course, nobody on the other side ever submitted them. But she was pro se. Doesn't the IJ at least have an obligation under those circumstances to say, we'll mark them for identification. They'll be in the record. So we can later, when we review this case, for all I know, one of those documents says she's a member of a self-defense league. She's pro per, uneducated. Had he looked at those documents, he might have said to her, hey, I see you're a member of a self-defense league. Let's ask him, tell me about that. So one of our problems here is our inability to review is caused in a large part by the IJ's failure to do what I think he should have been doing. I know you want to defend what he did, but I know she didn't say anything about a self-defense league. But she is pro per, and she doesn't know what's important. And she says, here are these documents. They'll support my case. And if one of those documents did say that there was a self-defense league, I assume at that point the IJ would have been required to say, tell me about it. Were you a member of it? What did it do? Was it political? Was it not political? And so that's my difficulty here. Help me with that. I guess there are two, well, three responses. The first one is she could have subsequently filed a motion to reconsider and attach the documents once she had retained counsel. Alternatively, she could have sought remand. I mean, the concern is that I think petition counsel here, his concern, is that the board would have rejected them because it's not new evidence. She had it at the hearing. But presumably if the argument is that I knew in advance, I didn't have an opportunity to present these to the immigration judge, despite the fact that I wanted to and I had them here and he knew about them, presumably they would have considered it. I don't know how they would have come down, but that's the case. Was there an avenue for getting them in the record after the hearing was over? The avenue would have been a motion to reconsider with the immigration or a motion to reopen before the immigration judge with attaching the documents. I think that would have been the opportunity to do that. And then had she done that and the immigration judge then said no, then presumably if there was a violation, we might have had more of a problem here. I think secondly, again, the difficulty is the documents may say a whole raft of things. They may say in Michigan there are problems in detail. The difficulty is that the immigration judge isn't going to know what she's honing in on. If the petitioner herself in developing the record, if the petitioner herself, if her claim doesn't have any indicia, any clue that she's talking about these defenses. But under these circumstances, doesn't the IJ at least have the obligation to say, I'll look at the documents. I won't admit them because they're not relevant. I will admit them. Now that I've looked at them, let me ask you a couple things. My problem here is that we have a pro per litigant. The IJ refusing to look at the documents and we're now saying that pro per litigant should have been smart enough to develop a claim. My difficulty with the other side is I don't know that they really have that claim at all. But that's why this case causes me some problems. Right. And I think there's strangely a link between sort of whether the immigration judge violated her due process by not letting her have the documents in the first place and that difficulty on the other side. The immigration judge at the front end of her initial hearing says, asks her, says, when you file your asylum application, present documents with it. And then she files her asylum application. He asks her, do you have any documents with this? Do you need additional time to bring in documents? But here's a problem I'm taking up on a suggestion made by Judge Hurwitz. When the immigration judge says, well, I'll assume there's a lot of general conditions of crime in Michoacan, what he's assuming is that the documents don't say anything different about a particular social group. So he's making a determination of fact without looking at the documents and without marking them for identification in the record. An a pro per case. This doesn't seem to be the discharge as a duty of properly developing the record. I understand, Your Honor. Well, if you understand, then do you concede? I concede. I think that there's a little bit more. I mean, he does ask her what these documents are about. And she says conditions in my, essentially. Essentially conditions in, right, right. She says conditions in my hometown. And he jumps from that to the generalized conditions of crime in Mexico without determining whether the conditions in my hometown might be somewhat different and ground a claim for a PSG, a particular social group. Well, what did she say in any of her prior documents? Her interview, her asylum application was her problem. Right. It was that she was robbed, wasn't it? It was that she's robbed. That she was being extorted from the organization, the Knights Templar. And that as a result of the extortion, she closed down her business and they kidnapped her husband. And subsequently, you know, they called her, they threatened her, they threatened her children. And she went to the police and they said, and they turned her away. Right. That's her claim in a nutshell. As far as, and that's her asylum application. We don't know what took place in her credible fear hearing. I mean, she might have had hundreds of other possible ways of getting asylum. She could have. Intrinsically, that is when a person applies for asylum, you know, you've got books and books and books of how many ways to get asylum. Right. I don't think that is correct. Any of which she might have claimed, but the only ones she claimed are the ones you just said. This is the only one she claimed. And the immigration judge, his ruling came down to, it's speculation that the people who called you, who threatened you at the back end of this, were the Knights Templar, were the people who were extorting you. Just to be clear, on this record, I don't think the immigration judge lacked, you know, I don't think his ruling was wrong on this record. On the record in front of him and the testimony he heard, and I don't think they're challenging it on the record. They're challenging the procedural aspect of keeping out the stuff that she wanted to submit. And so I'm still stuck with, at the very least, isn't there an obligation for the immigration judge to give us and the BIA a record that we can review? Under LADA, which is a case from, and I think I submitted it in the 2018. LADA? L-A-D-H-A. Okay. This court has previously said that the immigration judge, I mean, that it remanded the case after this court couldn't determine prejudice. It was because either the record wasn't marked for identification or the immigration judge hadn't adequately described what that was about. So you're saying that we do exactly that? I think that there is sufficient basis in his description and the claim that she has put forward. Here's my problem with LADA. I know you cited it. In LADA, the judge attempted to describe the records after looking at them, didn't he? That is true. And so we said in LADA, well, you know, you should have described them better once you looked at them so that we could review whether you were right or wrong. Here he never looked at them. Right, Your Honor. I think we're going to have one last question. Sure. I take it that these L-O-P-A-B-A is sort of like a country condition. That is, it's a well-known document. Have you or any of your colleagues ever looked at it? We have. I have not, Your Honor. I don't even know. I assume that that may be the case, and maybe I should have. It might be worthwhile to have looked at. Somewhere, but I'm just curious. Right, right. We're talking about things that seem to be in existence, but nobody wants to say whether they talk about, you know, they could talk about sexual abuse, they could talk about religious abuse, they could talk about anything. Right, a wide variety of things. All right, if nobody wants to do it, nobody does it. Sorry, Your Honor. I'm done. Okay. But let me hit the final couple of points. I think there's no reason to remand this on a family-based PSG, as Petitioner has argued, under LEA. No reason to remand it for what? For LEA. Your voice drops down. Oh, sorry. There's no reason to remand it to consider a family-based claim under LEA. She's never articulated a family-based claim. It's not exhausted. And the Board has subsequently said that to the extent anyone considers family to be somehow special or an exemption from MEVG and the requirements of showing immutability, particularity, social distinction, that's not the case. So that aspect of the Petitioner's claim is unsupported. Also, going to the underlying – oh, I am way past my time. Just very briefly, one, with regard to the didn't-develop-the-record claim, the immigration judge did bend over backwards to walk her through her claim and allow her to read her statement into testimony. And again, with regard to the rejection of the evidence as to a constitutional violation itself, she had other avenues of bringing the evidence into the record. And also, she did not – you know, and she did not avail herself of those opportunities. If this Court has any further – unless this Court has any further questions, the government rests. When did she get counsel? At what point? I don't know. I think that's the question, too. I'll ask that of counsel for the Petitioner on that. She had it before the BIA, right? She did have counsel before the BIA. She had counsel before the Board. All right. All right. Thank you. Rebuttal? She had counsel beginning January 12, 2016. Where does that – put that in the timeline for me. Approximately three – well, she was – How long after the IJ's – how long after the IJ's decision? The judge denied her case on New Year's Eve. And then she got counsel. Twelve days later. She quickly got counsel. She quickly got counsel, but then it took quite a while for us to review the record to the extent that we could. Just in closing, I'm in immigration court almost every day, but I represent my clients. I was appalled at what happened to her, per se. Self-defense groups is just one example for particular social groups. She was also a business owner who reported extortion to authorities. She was a witness of crime who reported to the authorities. So I take it you haven't reviewed these documents? The general – the documents from – What Judge Baer called Exhibit A. Have you reviewed them? I have not. So when you – Or the sister's documents. I have not seen the documents. And you didn't ask for a continuance to get Exhibit B, the sister's documents, and introduce them? Of course, you weren't in the – she did. I wasn't there, but she did request a continuance in court, and that would be the other due process violation. She wanted more time to be able to present her evidence, and he gave her a recess to annotate on her seven-page declaration what else she might want to say. But that's a poor alternative to defining the contours of a particular social group. That's my question. It goes to your brief. You suggest in your brief that perhaps she's a member of a vigilante group that opposes the government or has some political – could be a particular social group. But that's just – is that just speculation on your part? In other words, you haven't looked at the documents. It is just – We don't have anything in the record that allows – you're just saying maybe it will show this. Correct. It's just one example of many of the different social groups and political opinions for that matter because, as we know, the – Well, it's possible that she's a member of the Communist Party, too, and being persecuted for that reason, but we just don't know. When you represent this, you're not saying I represent that that's what her claim is going to be and she has evidence to support it. You're just saying perhaps that's a claim she might make. It may have affected the outcome, and I think that's the standard here for prejudice. All right. Thank you very much, Mr. Holt, for your rebuttal. Is there a point you wish to make? We'll give you a few more minutes. I just wanted to just say in conclosing that I respectfully request this Court not accept the BIA's decision in this matter because the BIA did not consider as a whole the probative evidence relevant to Ms. Espinosa's application. The Board didn't consider as a whole the probative relevant evidence, and also I wanted to end with a question. The presumption of prejudice in this Court applies to ineffective assistance of counsel claims. There's a presumption of prejudice in cases where, for example, an attorney fails to file an application or fails to file an appeal. There's a presumption of prejudice. Shouldn't there be a presumption of prejudice where the immigration judge fails to develop the record? And I would just leave it at that. Counsel, I heard you say earlier that she asked for more time during the hearing. Where or when did that occur? Was that in the final hearing or the first hearing? Well, she had a hearing in the first week of December, and he said, I'm going to set you for New Year's Eve, and she said, I need more time. There wasn't a lot of time for her, and then. Yeah, and when I read that part of the record, it wasn't clear to me whether she was saying I need time between now and New Year's Eve or I need time after New Year's Eve. And then when the documents were rejected. Am I right in saying I just can't tell that from the record? Correct, and then when Exhibit B was rejected, it was potentially rejected by the detention center. It's very hard to provide evidence. Right, and the immigration judge said, I'll find that it was returned for some reason, and it's not available. At that point, did she seek a. . . I think that was the question Judge Boggs was asking. At that point, did she seek a. . . I've got the transcript here. I just wondered. . . You might be right, but I didn't remember it and didn't find it immediately. And my recollection was the continuance was sought at the earlier hearing in December, not at the January one. After he issued his decision, she tried to speak. He muted her at the detention center and then finally told the guards, okay, unmute her. And then it went back on, and I'm listening because I have the audio transcripts. I've been listening to CDs as I drive. After the board decision, or after he issued his decision, he says, Madam, and this is on page 34 of the transcript, you tell the Board of Immigration Appeals that you think I did wrong by not giving you more time. Okay. But whether that's from a statement here or the earlier one. . . Yeah, okay. Okay, got it. And then the next page says, and you can tell them that you think I didn't give you enough time. Yeah. What you want to submit into evidence, I don't need. The background information about Mexico, I know it's a bad country. That's the judge. Okay. And I think that was a failure. Okay, got it. Thank you. Thank you. Any other questions? I have a question. Can you give me any reason why, with counsel in the BIA, these documents were not added to the record? Or here in the Ninth Circuit, why didn't you make a motion to expand the record by attaching the documents? I didn't know that I could do a motion to expand the Ninth Circuit. I haven't done much work before the Ninth Circuit. What if you were to file one now? If I was given leave to do so, I would provide additional. . . Because then we could look at those documents and say, yeah, the judge screwed up, but they wouldn't have made any difference. That would help my client quite a bit. The other thing that I would say is that. . . It might not help your client. I'm sorry. I said it might not help your client because it might be. . . It might be. . . But I think clarity always helps, and certainty helps. One other question, Mr. Holt, about Exhibit B. Do you have a way of getting the documents that the sister sent the petitioner and that were returned to the sister? I will speak to the client and do my best to get those documents. If you had an opportunity to amplify the record. If I had the opportunity, I certainly would. And to answer the court's question about why I didn't submit it to the Board of Immigration Appeals, the Board of Immigration Appeals isn't a fact finder. So if I had provided that evidence, they wouldn't have been able to use it. They would have had to remand it anyways. They could have evaluated the offer of proof and said that the IJ acted arbitrarily in not considering it. So that's not really a. . . See, I understand your client was pro per, but if this were a normal court proceeding, we would say, gee, you didn't make an offer of proof, so we can't tell what the documents that were excluded would have held. I'm not holding your client to that sort of level, but it's the way we would typically review an argument that the exclusion of evidence prejudiced someone. We would say, now we've looked at it, maybe it did. We should send it back. Maybe it didn't. I mean, nobody. . . You know, these documents could be the Oxford English Dictionary. Nobody, at least so far, claims they can state what they claim they might have, but when they're physical documents, I'm at the same place. I mean, I'm not saying that you're being dishonest in saying you didn't look at them, but it seems very strange. Two last things. One, the Board, in its decision, said this evidence, Exhibit A, was proffered, which it clearly was not, and that's something to consider in the Board's decision. The Board's decision on page 1 says Exhibit A was proffered. Well, I think the Board was correct in a sense. It was proffered. The immigration judge should have, under those circumstances, said either I'll mark it for identification and it will be in the record or looked at it and rejected it, but it was proffered. She said, here, I've got this evidence. I'd like you to consider it. That's a proffer. And two, the American Bar Association's legal orientation program that operates at that detention center and provided some of the supporting documents to Ms. Espinoza is partially funded by the Department of Justice. So we would believe that the documents provided by an organization partially funded by the Department of Justice would have supported the Department of Justice's employee, the immigration judge, in making a decision. And here, he rejected it. All right. Thank you very much. The case of Espinoza-Aguirret v. Bar is submitted for decision.
judges: Boggs, Bea, Hurwitz